Argued July 28, affirmed September 22, reconsideration denied
October 29, petition for review denied December 10, 1975

SPARKS, *Appellant, v.* PHELPS (No. 6992),
*Respondent.*
540 P2d 397

*John Toran, Jr.,* Portland, argued the cause and
filed the brief for appellant.

*James M. Habberstad,* The Dalles, argued the cause for respondent. With him on the brief were Dick & Dick, The Dalles.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

On February 18, 1974, defendant, John Phelps, and his wife, Kathleen D. Phelps, filed a petition for adoption of Stacy Yvette, his natural daughter. They contacted the child's mother, Janice Kay Sparks, and sought unsuccessfully to gain her consent. Promptly thereafter the latter filed this habeas corpus proceeding seeking return of the child. The trial court following a hearing denied the petition for the writ and entered judgment accordingly. Plaintiff mother appeals.

A brief statement of the facts as we glean them from the sketchy and inadequate record is necessary to an understanding of the issues. Plaintiff mother's maiden name was Loyd. She married one Ashby, by whom she had a child, Kimberly Dawn Ashby. Plaintiff's true name at the time of Stacy's birth was Ashby. It is not clear from the record when plaintiff was divorced from Ashby, nor are we advised when they parted. Sometime following her separation from him she and defendant, John Phelps, began living together. They were not and never have been married. On May 2, 1968, Stacy Yvette was born to plaintiff. Her birth certificate was filed under the name of Stacy Yvette Phelps, and plaintiff signed the certificate under the name Janice K. Phelps. Defendant was listed thereon as the father.

Following the birth the parties continued to live together with Stacy Yvette and her half-sister, Kim-

berly Dawn Ashby, until they separated in August 1971. At that time plaintiff moved out with the two girls, living at first with her own parents and then in an apartment. In the fall of 1971 she took the children back to her parents and left to look for work in Portland. Shortly thereafter the grandparents contacted the respective fathers and returned each child to her own father. Plaintiff was aware of this within a week thereafter. Stacy Yvette has lived with John Phelps ever since. Plaintiff continued living and working in the Portland area. On a trip to her parents' home she sought to visit with the child, and upon a number of occasions did so, sometimes taking the girl to the grandparents' home for visits there. On all such occasions she voluntarily returned the child to defendant. Thus it appears the child has lived with her natural father at all times since her birth except for about four months during the late summer and fall of 1971. She is now over seven years old.

John Phelps and Kathleen Phelps were married in September 1973. In February 1974 they filed a petition to adopt Stacy. When plaintiff was advised of this by them, she brought this habeas corpus proceeding. The two matters were not consolidated for trial and the adoption matter is therefore not before us, and is not considered herein.

Plaintiff, if we correctly understand her, contends alternatively, first, that as the natural mother of an illegitimate child she has a "paramount right against all others" to Stacy's custody, and second, that in any event there is insufficient evidence here to overcome her "paramount right to custody" of Stacy.

■ We point out initially that it is not contended defendant is not the natural father of Stacy, and the court so found. That a natural father of an illegitimate child does indeed have rights as well as obliga-

tions which are recognized and enforced by the law cannot today be challenged. *Stanley v. Illinois,* 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972); *Miller v. Miller,* 504 F2d 1067 (9th Cir 1974); *Clarkston v. Bridge,* 273 Or 68, 539 P2d 1094 (1975).

The general rules concerning the right of a mother of an illegitimate child to its custody are set out in Annotation, 98 ALR2d 417, 421 (1964), which states:

"It is almost universally held that the future welfare of the infant is the most important consideration of the court in awarding custody of an illegitimate child. It is often said to be the controlling consideration, or of paramount importance, or that all other interests, including the right of the mother to the custody of her child, must yield to the best interests of the child."

■ Thus it is clear that the "paramount right" for which plaintiff contends is not hers but rather the best interests of the child.

It is true, as the foregoing Annotation points out at 427:

"All jurisdictions recognize that within the framework of the cardinal principle that the welfare of a child determines its custody, the mother of an illegitimate child has a natural, primary, or prima facie right to the custody of her child, unless she is proved to be an unfit person to be entrusted with such a charge or it is demonstrated that she has abandoned the infant. * * *" (Footnote omitted.)

■ Here, however, there is not only no evidence offered by the mother concerning her own fitness other than that she is married and employed by a telephone company, but she offers none reflecting on the best interests of the child. The sole evidence is that the child has, with the mother's full knowledge, lived with her

father for all but four months of her more-than-seven years, that the mother has never, during the last three and one-half years, done anything to indicate that this was not in the child's best interest, and there is nothing else in the record to support such a conclusion.

Plaintiff contends that the trial court's findings are insufficient to support its judgment. In its carefully reasoned opinion it stated:

"Although the return to the writ in this case is not a model of pleading the court believes the pleadings do raise question of fitness to have custody and evidence on trial was elicited on this issue. Having been so raised the court, in Habeas Corpus proceeding, may make such determination. *Langenberg v. Steen,* 213 Or 150; *Armstrong v. Vancil,* 168 Or 320; *Ex Parte Bowers,* 78 Or 390; *Barnes v. Long,* 54 Or 548; *Quinn v. Banks,* 192 Or 254; *Bartlett v. Bartlett,* 175 Or 215 and *Ettin v. Robinson* [221 Or 193].

"* * * * *

"It appears to the court that the issue is not that of simply considering the respective rights of the parties but the more critical consideration—what are the rights of the child? See *Bartlett v. Bartlett,* 175 Or 215. In resolving this concern the court must consider the child's present circumstances in the perspective of what has transpired to date. The plaintiff left her child in the care of her parents, believing her child would receive proper care. She is not to be faulted for this decision. Thereafter, conditions did change that now have made the consideration of the rights of the child paramount. The child, as previously mentioned, has been in the home of the defendant for all but a few months of her life. The plaintiff has manifested but minimal interest in her child and, until the petition for adoption was filed, was content that the child remain in the defendant's home. The defendant, now married, has demonstrated a willingness and an

ability to provide a proper home for the child. To now remove the child from this environment and place her in a home of undemonstrated suitability, merely on the basis that the defendant was never married to the child's mother, would be an absurdity.

"In reaching this result the court has necessarily concluded that the filing of the petition for adoption is not a bar to this proceeding, that paternity of the defendant is established, that this Habeas Corpus proceeding, equitable in nature, is the proper procedure to determine custody and that the paramount interest of the child overweighs the priorities of the parties that arise from illegitimacy."

We think the findings are sufficient to support the dismissal of the writ.

Affirmed.