Edward J. McLaughlin, J.
This proceeding is before the court on a petition brought by an unwed father seeking an order awarding him custody of his two out-of-wedlock children pursuant to subdivision (b) of section 651 of the Family Court Act. Respondent, the natural mother of the children, opposes the petition.
Petitioner, a native of New York State, and respondent, a native of Puerto Rico, lived together as husband and wife between August, 1970 and June, 1976, openly and notoriously to the community, without the benefit of a ceremonial marriage. The two children, Joseph Waiki and Adon Roberto, were born from this relationship on November 24, 1971 and August 8, 1973, respectively. The children are currently residing with the petitioner.
Paternity, although not at issue, has never been legally established. Instead, petitioner has acknowledged in court under oath that he is the natural father of the two children, and has held himself out to be such since their births. Petitioner has been accepted as the father of these children by his family, associates and other members of the community. Respondent concedes under oath that the statements as to petitioner’s paternity are accurate.
Petitioner, age 31, resides with his mother and father and a sister at a house owned by his parents. He is employed at an annual salary of $12,000, has never been on welfare, and has consistently and adequately provided for the needs of his two children since their birth. Further, the paternal grandmother, who has testified that she dearly loves the children, can provide adequate means of care for the children when petitioner is at work.
Petitioner, after six years of living with respondent in an unwed state, proposed marriage, but was refused. Subsequently, respondent left her children and petitioner in April, 1976, and moved to Buffalo, New York. She currently lives with her fiancé, whose child she is allegedly carrying, together with his brother and his brother’s girl friend. Respondent, age 26, is unemployed and receives partial welfare assistance.
The issue now before the court is whether a putative unadjudicated father can obtain custody of his out-of-wedlock children, over the custodial rights inherently held by their natural mother, without first showing that she is unfit, through the use of the "best interest of the child” standard, as enunciated in Matter of Bennett v Jeffreys (40 NY2d 543).
*655 The court must first determine whether a putative unadjudicated father has legal standing to bring a custody petition pursuant to subdivision (b) of section 651 of the Family Court Act. Prior case law has held that anyone alleging to be the natural father of an out-of-wedlock child has legal standing to file a custody petition (Matter of J. (50 AD2d 890). Further, the Appellate Division of the Fourth Department in Matter of Ricky M. v Sharon B. (49 AD2d 1035) held that as long as the petition alleged that petitioner was a parent of the child, the proceeding could not be dismissed for lack of jurisdiction. Moreover, to hold that only a natural mother or an adjudicated father could initiate a custody petition under the Family Court Act would constitute irrational discrimination against a putative father, and deprive him of equal protection of the law. (Matter of Crane v Battle, 62 Misc 2d 137.) In Matter of Juan R. v Necta V. (84 Misc 2d 580, affd 55 AD2d 33), the court found legislative intent to confer upon a putative unadjudicated father standing to institute a custody proceeding under subdivision (b) of section 651 of the Family Court Act.
Thus it seems clear to this court that petitioner, through the mere allegations of fatherhood, has legal standing to petition for custody of his out-of-wedlock children.
The essential issue with which the court must now concern itself is whether the "best interest of the child” standard should be applied in the determination of custody, and if so, whether the court must first find the mother unfit in order to give custody to the natural father.
The present New York rule applicable to the disputed custody of out-of-wedlock children between parents is that expressed in People ex rel. Meredith v Meredith (272 App Div 79, affd 297 NY 692). When a dispute on custody exists between a mother and the putative father of a child born out of wedlock, (p 82) "the [natural] mother * * * is prima facie entitled to * * * [the] custody [of such child].” The opinion went on to state that custody may be awarded to the putative father under circumstances where the mother is proved to be an unfit person. However, the court also maintained (p 82), "When the question of custody of children is brought before the court by habeas corpus, it is the duty of the court to look solely to their welfare and decide accordingly. * * * [T]he court acts as parens patriae to do what is best for the interest of the child * * * [and such standard] applies with equal force to illegitimate children.”
*656 Thus, a trial court is confronted with two doctrines, the doctrine of prima facie entitlement to custody by the natural mother and the concept of "best interests of the child”, which appear contradictory.
The Family Court of Westchester County has attempted to resolve this conflict by stating "the distinction between legitimate and illegitimate children insofar as the latter * * * carries with it the presumption of custody in favor of the natural mother, should be reconsidered and abolished in the Family Court.” (Matter of Godinez v Russo, 49 Misc 2d 66, 68.) The basis of that decision is that blind adherence to an approach which mandates prima facie custody in the natural mother, inhibits adequate consideration of the best interests of the child.
More recently, the trend of courts is to recognize that unwed fathers, like mothers, often have strong ties of affection to their out-of-wedlock children, and desire a continual, stable relationship with them. (Matter of Stone v Chip, 68 Misc 2d 134.) The United States Supreme Court’s decision is Stanley v Illinois (405 US 645), is the foremost recent case where the judiciary recognized the rights of unwed fathers. "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and * * * protection” (p 651). (See, also, Rothstein v Lutheran Social Servs., 405 US 1051; Vanderlaan v Vanderlaan, 405 US 1051; Matter of Malpica-Orsini, 36 NY2d 568.) Stanley determined the parameters for the rights of an unwed father under the due process and equal protection clauses of the Federal Constitution.
The natural father’s custody rights have also been expanded in the legislative area. In 1964, New York State amended section 70 of the Domestic Relations Law (L 1964, ch 564, § 1), a statute similar to the custody provision contained in subdivision (b) of section 651 of the Family Court Act. Custody applications were formerly restricted to those of a "husband or wife” under this statute. The amendment replaced the phrase "husband or wife” with its present form of "either parent”. The applicable section now provides, "[I]n all cases there shall be no prima facie right to custody of the child in either parent, but the court shall determine solely what is for the best interest of the child, and what will best promote its welfare and happiness”.
Judge Scileppi, in his dissenting opinion in Matter of Anonymous v Anonymous (26 NY2d 740), argued that this amend *657 ment removed any distinction between the rights of parents of children born in or out of wedlock. "[T]here is nothing in the legislative history of this statute [section 70 of the Domestic Relations Law]”, he said, "to justify the drawing of such a distinction” (p 746).
In the recent landmark case of Matter of Bennett v Jeffreys (40 NY2d 543, supra) a custody case dealing with the rights of a parent versus a nonparent, the Court of Appeals applied the "best interest of the child” standard. However, the court first required a finding of extraordinary circumstances before the natural parent, who had not been found to be unfit, could be deprived of the custody of the child. That portion of the decision necessitating the finding of extraordinary circumstances as a precondition to the use of the "best interest of the child” standard is inapplicable to the instant case, in which the custody dispute is between the natural parents.
Therefore, in the spirit of Matter of Bennett v Jeffreys (supra) this court holds that the present state of rights of the unwed father, who has openly acknowledged paternity and has maintained an on-going relationship with his child, has evolved to the point where the proper standard to be used in a custody proceeding should be the "best interests of the child” standard, as set forth in section 70 of the Domestic Relations Law, regardless of the child’s legitimacy status at birth. There is no prima facie right to custody in either parent; best interests of the child is the applicable standard, without preconceptions of any kind.
This court now makes an evaluation as to which parent can best provide for and protect the health, welfare, education and general well-being of the children.
The children will fare better in the custody of their natural father than with their mother, who has voluntarily left her children; is lacking an established household of her own; is living in an illicit relationship with her current paramour, and already at the age of 26 has had three out-of-wedlock children and is expecting another.
Admittedly, sexual relations out of wedlock would not ipso facto serve to disqualify the natural mother from a custody award. However, when a pattern of behavior is evidenced, whereby a mother fails to adhere to accepted societal moral standards, thereby failing to promote her children’s well-being, the court must then consider these factors and their effect *658 on the children’s best interest. Respondent has evidenced such behavior to this court.
Petitioner, on the other hand, has shown to this court his concern for the moral, emotional, mental, and physical welfare of his children. He has recognized his children in tangible ways, has demonstrated a sincere interest and love for them in a repetitive, customary manner; has voluntarily paid adequate support, and has taken care of the two children all of their lives. We are not dealing with an unwed father who merely engaged in a single hit-and-run sexual adventure. Instead, the petitioner is a father who loves, cares for, and has shown an active interest in his children.
Therefore, it is he who can provide a stable home and environment, promoting the optimum growth of his children.
Petition is granted. Custody is awarded to the petitioner, with reasonable rights of visitation to the mother.