Decided July 14, 1999

### IN RE JONATHAN M.

The respondent father's petition for certification for appeal from the Appellate Court (AC 19120) is denied.

BERDON, J., with whom MCDONALD, J., joins, dissenting. The trial court terminated the parental rights

of the petitioner, John M.,[1] for no reason other than this: he tried to keep his infant son Jonathan M. out of harm's way. The Appellate Court dismissed John's appeal from this termination on the ground that he failed to prosecute his pro se appeal with due diligence, then denied his subsequent motion to open the dismissal.[2] John seeks certification to appeal from this denial. I would grant certification, summarily reinstate the appeal and transfer the appeal to this court.[3] I cannot say that I am surprised to report that the majority disagrees with me.

In its opposition to this petition, the state has cited *State* v. *Anonymous*, 179 Conn. 155, 171, 425 A.2d 939 (1979), for the proposition that "[t]ime is of the essence in child custody cases." This proposition is indisputably correct, but there is another side to the coin: a father has a "fundamental liberty interest . . . in the care, custody, and management of [his natural] child . . . ." *Santosky* v. *Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

The trial court opinion explained the underlying facts of this case as follows: "On October 31, 1997, the department of children and families [department] filed coterminous petitions for neglect and for the termination of the parental rights of Stacie M. and John M. to their son, Jonathan M. [who was about five months old at the time and who was] one year and five months old [at the time of trial]. Jonathan was placed in foster care on October 29, 1997, after a fight in the home between his mother and father concerning his care. His mother

---

[1] In the interest of protecting the privacy of the family, the surnames of the parties have been omitted from official documents.

[2] The motion to open the dismissal was filed by an attorney who included all of the necessary papers that John—as a layperson—had failed to file in his pro se appeal.

[3] We may transfer cases to ourselves pursuant to Practice Book § 65-1 and General Statutes 51-199 (c).

had been absent from the household for two weeks, on a cocaine 'binge.' Upon her return, [John] refused to leave [Jonathan] with her . . . as he thought she was high on drugs. They clashed verbally and physically with Jonathan between them. After the police arrived, Stacie was arrested and Jonathan was immediately placed in foster care. On October 31, 1997, [the department] secured an order of temporary custody (*Ward, J.*). As to neglect, [the department] alleged both that Jonathan had been denied proper care and attention, physically, educationally and morally and also that he was being permitted to live under conditions, circumstances or associations injurious to his well-being. The termination petition alleged that [Jonathan] has been denied, by reason of an act of parental commission or omission, the care, guidance or control necessary for his physical, educational, or emotional well-being. [General Statutes] § 17a-112 (c) (3) (C). Jonathan has remained in foster care since October, 1997, and has regular visitation with his mother and father. Stacie had an older child, Dalilah Rose N., who was removed from her care.[4] Her rights to this child were terminated (*Foley, J.*) on December 16, 1996, [which] order [was] rectified on February 14, 1997. This judgment was affirmed in a per curiam decision of the Appellate Court, *In re Dalilah N.*, 48 Conn. App. 921 [714 A.2d 731] (1998)." *In re Jonathan M.*, Superior Court, Juvenile Matters, Child Protection Session at Middletown, Docket No. H14-CP97-005574A (October 23, 1998).

John recited the following procedural history in the petition for certification that he submitted to this court: "On October 23, 1998, the trial court (*Quinn, J.*) entered judgment terminating [John's] parental rights to his son, Jonathan . . . . The court adjudicated on the statutory termination ground of acts of parental commission or

---

[4] John is unrelated to this child.

omission. . . . The trial court granted the motion of [John's] court appointed attorney to withdraw from representing [him]. [John], due to his indigence, was appointed [another] attorney who was directed by the trial court, pursuant to [Practice Book] § 35-4 (b), to: (1) review potential claims for appeal; and (2) either: (a) secure [John's] right to appeal by filing an appeal in accordance with the relevant provisions of the Rules of Appellate Procedure; or (b) move to withdraw in a timely enough fashion to allow the Appellant the opportunity to secure private counsel or proceed pro se.

"The attorney appointed by the trial court to act on [John's] behalf neither made inquiry into whether there were any issues worthy of appeal, nor secured [John's] right to take an appeal, nor did he make it known to the judicial authority that there was no merit to an appeal at the earliest possible moment. [John], upon his own initiative, and with no financial resources, was able to secure his appeal rights by filing pro se an application for waiver of fees and costs (which was granted by the court on December 2, 1998), and [the appropriate appeal] form. Being unlettered in the law, and without the financial ability to hire an attorney, [John] was not able to figure out [what additional papers] he needed to file . . . in order to proceed with his appeal.

"On December 23, 1998, the [state] filed a Motion to Dismiss for Failure to Prosecute with Due Diligence asserting that [John] had not filed: (1) a preliminary designation of the pleadings; (2) a transcript certification; (3) a docketing statement; and (4) a proposed judgment file. The . . . Appellate Court dismissed [John's] appeal sometime in the early part of 1999. [John] did not have notice of the dismissal.

"On April 6, 1999, [John], through counsel, filed a Motion to Open Dismissal for Failure to Prosecute With

Due Diligence, (along with the requisite . . . papers), which was denied on May 5, 1999." (Citations omitted; internal quotation marks omitted.)

My colleagues in the majority are insensitive to the fact that the termination of parental rights represents " 'the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . .' It is, accordingly, 'a most serious and sensitive judicial action.' *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). Although the severance of the parent-child relationship may be required under some circumstances, the United States Supreme Court has repeatedly held that the interest of parents in their children is a fundamental constitutional right that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); see also *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 295, 455 A.2d 1313 (1983) (noting that 'it is both a fundamental right and the policy of this state to maintain the integrity of the family'). Termination of parental rights does not follow automatically from parental conduct justifying the removal of custody. 'The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.' *Santosky* v. *Kramer*, [supra, 455 U.S., 753]." *In re Jessica M.*, 217 Conn. 459, 464–65, 586 A.2d 597 (1991).

The facts of this case narrate a nightmare. Our judicial system has failed Jonathan, violated John's constitutional rights, and parted John from Jonathan with a

legal wedge. It is difficult for me to believe that a father's parental rights could be terminated simply because he tried to protect his son; sadly, this is exactly what happened. It is equally difficult for me to believe that the Appellate Court and my colleagues in the majority could rubber stamp the obvious injustice in this case; sadly, this is also exactly what happened.

Accordingly, I dissent.

*Raymond J. Rigat,* in support of the petition.

*Lawrence G. Widem,* assistant attorney general, in opposition.

Decided July 14, 1999