MEMORANDUM OF DECISION
The issue in this case is whether the writ of habeas corpus can be used to collaterally attack a final judgment of termination of parental rights. Our Supreme Court specifically left this issue open in In re Alexander V., 223 Conn. 557, 571 n. 12, 613 A.2d 780
(1992). For the reasons stated below, this court holds that the writ may not be used for such a collateral attack. Accordingly, the court grants the respondent's motion to dismiss.
BACKGROUND
The record discloses the following undisputed facts. On October 31, 1997, the respondent Department of Children and Families (DCF) filed coterminous petitions for neglect and for the termination of the parental rights of Stacie M. and the CT Page 57 petitioner, John M., to their son, Jonathan M.[2] See Practice Book § 33-12. At about the same time, Jonathan, who was born on May 19, 1997, went into DCF foster care. See In re JonathanM., Superior Court, Judicial District of Middlesex, Docket No. H14-DP97-005574A (October 23, 1998) (Quinn, J.). No dispute exists that Jonathan has remained in the same foster home through the current time.
On October 23, 1998, the trial court, Quinn, J., issued a memorandum of decision granting the neglect and termination petitions against both parents. The trial court then granted the motion of the petitioner's court-appointed attorney to withdraw and, pursuant to Practice Book § 35-4(b), appointed another attorney to review the record to determine the merits of an appeal. See In re Jonathan M., 250 Conn. 903, 906, 734 A.2d 981
(1999) (Berdon, J., dissenting). The petitioner filed a pro se appeal, which the Appellate Court dismissed due to the petitioner's failure to file the proper appellate papers. Id. On April 6, 1999, the petitioner, now represented by his current attorney, filed a motion to open the dismissal in the Appellate Court. The Appellate Court denied the motion on May 5, 1999. On July 14, 1999, the Supreme Court denied a petition for certification to appeal from the Appellate Court. In re JonathanM., supra, 250 Conn. 903, 908.
On August 6, 1999, the petitioner filed this petition for a writ of habeas corpus in Superior Court. The petition is in four counts. The first count alleges that the petitioner's trial counsel was ineffective in various ways. Count two alleges that the attorney appointed to review the file for a possible appeal was ineffective in that he allegedly failed to do so and failed to file an appeal. The third count alleges that there was insufficient evidence and no compelling state interest to warrant a termination adjudication on the statutory ground of acts of commission or omission. See General Statutes (Rev. to 1997) §17a-112 (c)(3)(C).[3] Count four claims that the petitioner was denied equal protection on the ground that the State does not have a meaningful system of appointing counsel to represent indigent parents seeking to appeal termination judgments. As relief, the petitioner seeks to set aside the judgment of termination and requests either the granting of judgment in his favor, an order for a new trial, or restoration of his appellate rights.
The respondent has filed a motion to dismiss. At the hearing on CT Page 58 the motion, the respondent represented, and there was no dispute, that a contemplated adoption of Jonathan by the foster parents has been held in abeyance pending the outcome of this case.
DISCUSSION
 I.
As early as 1796, our courts have viewed a petition for a writ of habeas corpus as a proper procedural with which to challenge the custody of a child. See Weidenbacher v. Duclos, 234 Conn. 51,60, 661 A.2d 988 (1995) (citing Nickols v. Giles, 2 Root (Conn.) 461 (1796)). The theory has been that the absence of the child from legal custody is equivalent to his illegal restraint. See 39 C.J.S. Habeas § 124(a), p. 912-13 (1976). The "jurisdiction exercised by the court rests on its inherent equitable powers and exerts the force of the state, as parens patria[e], for the protection of its infant ward." Weidenbacher v. Duclos, supra, 67 (Internal quotation marks omitted). of common law origins, the habeas writ in child custody cases now has recognition in our statutes and rules. See General Statutes § 46b-1; Practice Book §§ § 25-40 et seq.; Lehman v. Lycoming CountyChildren's Services, 458 U.S. 502, 514 (1982); Weidenbacher v.Duclos, supra, 65.[4]
Our Supreme Court has characterized the issue of who may petition for a child custody habeas writ as one of standing. SeeWeidenbacher v. Duclos, supra, 234 Conn. 60-63. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." Id., 62 (Internal quotation marks omitted).
The classic formulation of the availability of habeas to challenge child custody is that it extends to a "controversy between a parent and a parent or a parent and a stranger." Dunhamv. Dunham, 97 Conn. 440, 443, 117 A. 504 (1922).[5] In either type of controversy, according to this formula, the person with standing to seek the writ has been a "parent." The Court has revised its formulation to state that "only parents or legal guardians of a child have standing to seek habeas corpus relief," and explained that "parents" could include either biological or adoptive parents. Nye v. Marcus, 198 Conn. 138, 143-44, CT Page 59502 A.2d 869 (1985).
The Court has declined to extend the concept of parent beyond this definition. It has denied standing to foster parents. Id. And it has denied standing to a person who was essentially a psychological but not a biological parent. See Doe v. Doe,163 Conn. 340, 307 A.2d 166 (1972).
Thus, typical Connecticut cases have involved a father of an illegitimate child seeking custody from the natural mother, Pi v.Delta, 175 Conn. 527, 400 A.2d 709 (1978), or a father seeking a writ against the maternal grandparents, who had obtained custody of the child after the mother died, McGaffin v. Roberts,193 Conn. 393, 479 A.2d 176 (1984). See also Howarth v. Northcott,152 Conn. 460, 208 A.2d 540 (1965) (wife seeking custody from ex-husband). In these cases, habeas is "the only procedure, other than actions for divorce or legal separation, by which the Superior Court has original jurisdiction over custody of minor children." Id., 461.
Our Supreme Court has decided two cases in which it was not clear whether the person seeking the habeas writ was a legal parent. In Hao Thi Popp v. Lucas, 182 Conn. 545, 438 A.2d 755
(1980), a mother who had relinquished her two minor sons to an adoption agency in Vietnam sought a habeas writ against the man who had adopted them. The Court concluded that it would not accord comity to the Vietnamese adoption agreement and thus the mother's parental rights were not in fact terminated under Connecticut law. And in Weidenbacher v. Duclos, supra,234 Conn. 51, the petitioner claimed to be the father of a child born to the respondent parents while they were married. The Court held that the presumption of legitimacy for a child born in wedlock could be overcome and that the petitioner had made a sufficient preliminary showing that he was the biological father to permit him to go forward with the case. Id., 68-78. Together, these two cases reveal that a child habeas petition may be filed not only by a person who is undisputably a parent but also by a person who has a strong claim to currently being a parent.
In the present case, the petitioner is in a fundamentally different position. He is not currently the undisputed parent of Jonathan M. Cf. McGaffin v. Roberts, supra, 193 Conn. 393;Howarth v. Northcott, supra, 152 Conn. 460. Nor is this case likeHao Thi Popp or Weidenbacher in which there was a strong claim that the petitioner currently is a parent. Here, a final judgment CT Page 60 of the Superior Court has terminated the petitioner's parental rights. This judgment is presumptively valid. See Brookfield v.Candlewood Shores Estates, Inc., 201 Conn. 1, 7, 513 A.2d 1218
(1986).
Although the petitioner maintains that the court erred in granting the termination petition, he does not contend that the court lacked jurisdiction to do so or that in any other respect the judgment of termination is not final. The petitioner also claims that this court should reinstate him as a parent of Jonathan M., but the petitioner can make no claim that he currently is the parent of Jonathan M. Under our case law, then, he lacks standing to seek habeas corpus relief. See Nye v.Marcus, supra, 198 Conn. 143-44. See also Adoption of AlexanderS., 44 Cal.3d 857, 750 P.2d 778, 784-85, 245 Cal.Rptr. 1 (1988) ("habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-related action where the trial court had jurisdiction to render the final judgment.").
 II.
A second characteristic of a writ of habeas corpus in this context is that the issue is "one of custody." McGaffin v.Roberts, supra, 193 Conn. 406. "The issue is not the illegality of confinement, as is normally the case. . . ." Pi v. Delta,
supra, 175 Conn. 530. Rather, "[a] habeas petition concerning a minor child's custody is an equitable proceeding in which the trial court is called upon to decide, in the exercise of its sound discretion, the custodial placement which will be best for the child." Weidenbacher v. Duclos, supra, 234 Conn. 51 (Internal quotation marks omitted).
The petitioner here seeks to address not only the issue of custody, but also the issue of parental rights. As our Supreme Court has stated: "This difference in the issues is a difference in kind and not in degree. This is so because of the substantial difference in the mandated result in each instance, i.e., the termination of parental rights which is final versus the award of custody which is modifiable." McGaffin v. Roberts, supra,193 Conn. 406. See General Statutes § 46b-56 (a). Indeed, termination of parental rights means the "complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent or parents so that the child is free for adoption. . . ." General Statutes §§ 45a-604 (7) and 45a-707 (8). Termination results in "an CT Page 61 everlasting severance of the legal relationship, and usually the permanent separation of parent and child. . . ." In re CarissaK., 55 Conn. App. 768, 775, ___ A.2d ___ (1999).
Further, custody is only one aspect of parental rights. The father and mother of every child are, at birth, the "joint guardians of the person of the minor. . . ." General Statutes §§ 45a-606. "Guardianship" refers to "the obligation of care and control, the right to custody and the duty and authority to make major decisions affecting the minor's welfare. . . ." General Statutes §§ 45a-707 (4) (emphasis added). Thus parental rights is a much greater issue than custody.
Although the petitioner here seeks custody of Jonathan M., he also seeks to relitigate the issue of parental rights. Under our existing case law, as discussed above, the issue of parental rights is beyond the scope of the writ of habeas corpus.
 III.
Although existing case law appears to prohibit the use of habeas corpus to address a claim of ineffective assistance of counsel arising out of a parental rights termination proceeding, the fact that the Supreme Court has specifically left this issue open invites an examination of whether this court should expand the writ of habeas corpus, beyond what our Supreme Court has currently authorized, to encompass the claim here. To be sure, fundamental interests are at stake. "The rights to conceive and to raise one's children have been deemed essential . . . basic civil rights of man . . . and [r]ights far more precious . . . than property rights. . . ." Stanley v. Illinois, 405 U.S. 645,651 (1972) (Internal quotation marks omitted). The right to family integrity extends not only to parents, but also to children. "It is the interest of the parent in the companionship, care, custody and management of his or her children . . . and of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association, with the parent. . . ." Pamela B. v. Ment, 244 Conn. 296, 310,709 A.2d 1089 (1998) (Internal quotation marks omitted).
On the other hand, the State's interest in finality in termination cases is unusually strong. "It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development CT Page 62 as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v.Lycoming County Children's Services, supra, 458 U.S. 513.
There is no question that the wrongful termination of a parent's rights due to ineffective assistance of counsel represents a miscarriage of justice. There are, however, safeguards in the judicial system designed to minimize the risk of such a result.[6] To begin with, every termination trial is a trial to the court. "A judge is not an umpire in a forensic encounter . . . He is a minister of justice. . . ." Joyner v.Commissioner of Correction, 55 Conn. App. 602, 617, 740 A.2d 424
(1999) (Internal quotation marks omitted). As a minister of justice, a judge may have a duty to supply some missing coherence to an ineffective attorney's case, so long as the judge does not cross the line into becoming an advocate or stray beyond the admissible evidence in the case. Surely a judge presiding in a termination case has more ability than would a jury in a criminal case to understand what an ineffective attorney may inartfully be attempting to do.
In some cases, counsel for the other parent, or for the minor child, may provide assistance to the cause of the parent whose attorney is not representing him adequately. Moreover, if appointed trial counsel, due to his incompetence or any other reason, does not see sufficient merit to an appeal, our rules provide for the review of the record by a different attorney to determine the merits of an appeal and for his appointment as appellate counsel if he finds merit. See Practice Book § 35-4
(b). This procedure differs from that in criminal cases; there a different attorney will ordinarily not be appointed unless both the trial judge and the original defense attorney find that an appeal would be wholly frivolous. See Practice Book §§ 43-34
to 43-38. Other postjudgment remedies in termination cases may also exist. See In re James L., 55 Conn. App. 336, 344 n. 10,738 A.2d 749 (1999) (motion for new trial based on newly discovered evidence).
In contrast with the reduced likelihood that the ineffective assistance of trial counsel will affect the outcome of a termination case, there is near certainty that expanding the habeas writ to permit ineffective assistance claims in these cases will have a profound effect on the welfare of the children involved. The filing of a postjudgment habeas petition, or CT Page 63 perhaps even the uncertainty concerning whether such a petition will be filed, will inevitably cause DCF to delay adoption proceedings, as it has in this case. While adoption proceedings are on hold, the child in question will remain in legally temporary foster care, which is clearly not in the best interest of most children. See In re Savanna M., 55 Conn. App. 807, 814,740 A.2d 484 (1999). The prospect also exists that a habeas petition will be filed after adoption proceedings have become "final," thus creating the frightening possibility that a habeas petition will negate the permanent placement of a child whose status had presumably been in limbo for several years.[7] Given these prospects, potential adoptive parents in termination cases will undoubtedly be less likely to come forward. The petitioner proposes no remedy for such grievous results.[8]
Given the enormous cost to foster children that permitting habeas writs in termination cases may entail and the remedies that exist to ameliorate any ineffective trial counsel assistance, this court sees no mandate to expand the existing scope of the writ to permit its application in such cases. Although the writ of habeas corpus in child custody cases is of common law origins, the General Assembly has recently acted in this area. See Public Act 88-332, § 3 (1988), codified in General Statutes § 52-466 (f).[9] Accordingly, if the fundamental change in the habeas writ proposed by the petitioner is to take place, this change should also come from the General Assembly, not this court. See Lehman v. Lycoming CountyChildren's Services, 648 F.2d 135, 156 (3 d Cir. 1981) (Seitz, C.J., concurring), aff'd, 458 U.S. 502 (1982) ("such a major departure from traditional uses of federal habeas corpus . . . [should] await a congressional directive on the matter.").
III. CONCLUSION
For the foregoing reasons, the motion to dismiss is granted.
It is so ordered.
Carl J. Schuman Judge, Superior Court