JAMES T. KEARNEY ET AL. v. STATE OF CONNECTICUT ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued October 19, 1977—decision released February 14, 1978

*Frank B. Cochran,* for the appellants (intervening defendants Robert and Nancy Santacroce).

*Martin B. Burke,* with whom were *Leo B. Flaherty, Jr.* and *Mitchel E. Kallet,* for the appellees (plaintiffs).

Speziale, J. This is an appeal by the intervening defendants, Robert and Nancy Santacroce, from a judgment of the Superior Court, denying their

prayer for a writ of habeas corpus and ordering that custody of the minor child remain with the plaintiffs, James and Alice Kearney.

A statement of the background in this case is necessary to place the issues in proper context and to explain the limited scope of our review of the issues raised. The minor child, Tina, whose custody is in dispute here, was born May 15, 1975. On November 2, 1975, Tina was placed with the Santacroces for foster care. She resided continuously with them from November 2, 1975, until January 12, 1977. The Santacroce family consists of Robert and Nancy, their four natural children, ranging in age from five to thirteen years, and a nine-year-old niece. Mr. and Mrs. Santacroce have been taking foster children for the state for about three years, and during that time have cared for approximately fifty foster children. With the exception of Tina, none of these children stayed for more than six weeks continuously. In March, 1976, Mrs. Santacroce asked Paula Mikutel, Tina's social worker, whether she could be considered as an adoptive parent if Tina were released for adoption. Mrs. Mikutel responded that it was not customary for temporary foster parents to adopt. At that time, Tina was not available for adoption, since no proceeding had been instituted to terminate the rights of her natural mother. In November, 1976, the natural mother's rights were terminated by court order. The Santacroces were informed of the termination some time in December, and before Christmas Mrs. Santacroce was told that Tina would be made available for adoption. Mr. and Mrs. Santacroce never filed a formal application to adopt Tina.

Mr. and Mrs. James T. Kearney made an application to the state for adoption in November, 1972. On January 4, 1977, Sandra Tinyk, the case social worker who had investigated them as potential adoptive parents, informed the Kearneys that there was a little girl ready for them to adopt. The Kearneys saw Tina at the Santacroce home on January 10 and 11, 1977. On January 12, they returned to the Santacroces and left with Tina. Upon receiving the child, the Kearneys signed an agreement to adopt with the department of children and youth services. They were assured by Mrs. Tinyk that Tina was fully and legally available for adoption and that "under no circumstances would she be removed" unless an investigation "might lead to . . . [the department's] knowledge of the child's neglect or abuse by . . . [the Kearneys]."

The department of children and youth services has a policy of providing the opportunity for an administrative case review prior to removal of a child from a foster home where he or she has resided for more than ninety days. The policy requires that a revocation proceeding involving a child in a foster home be preceded by written notice to the child and the foster parents, and if either the child or the foster parents express concern that the plan is not in the best interest of the child, they must be advised of their right to a case review and assisted in requesting the review. Because none of the other foster children placed with the Santacroces had ever remained for more than ninety days, this policy had not been applicable to prior removals, and Mrs. Santacroce was unaware of its existence until after Tina was removed from her home. Although Tina had remained with the Santacroces for over fourteen months, no case

review was held prior to the decision to remove Tina. The state conceded that it had erred in failing to notify the Santacroces of their right to such a review.

Approximately one week after Tina was removed from their home, Mrs. Santacroce contacted the department of children and youth services, and after a meeting between Mrs. Santacroce and several members of that agency, it was determined that Tina's placement would be reevaluated. On February 1, 1977, Mrs. Tinyk informed the Kearneys that because of a technical error by the state, Tina was going to be removed from their home the next day and returned to the foster parents.

On February 2, 1977, the Kearneys filed the instant complaint, seeking a temporary injunction restraining the state from interfering with the Kearneys' temporary custody of Tina, an award of temporary custody, and the appointment of an attorney to represent the interests of the minor child. The state filed a counterclaim seeking an injunction to restrain the Kearneys from interfering with the state's recovery of custody, and an award of temporary custody. The court granted the Santacroces' motion to intervene as party defendants. They filed two special defenses to the Kearneys' complaint, one of which alleged that the state's removal of Tina without prior notice of their right to a review or of their right to seek adoption violated the due process rights of both the Santacroces and the child. By way of counterclaim they sought a writ of habeas corpus "commanding said James T. Kearney and Alice A. Kearney to bring the child Tina before the Court that the court may make such order concerning her custody as will best serve her welfare."

After a full hearing on the merits the court found the issues for the Kearneys, and rendered a judgment denying the writ of habeas corpus and ordering that custody remain with the Kearneys pending adoption. Only the intervening defendants, Robert and Nancy Santacroce, have appealed from that judgment. They claim error in the trial court's failure to find that their due process rights were violated, in its failure to appoint a guardian ad litem or attorney to represent the child, and in its conclusion on the habeas corpus petition that it was in the child's best interest that she remain with the Kearneys. At oral argument, however, counsel for the Santacroces conceded that the scope of the appeal was limited to the denial of the writ of habeas corpus. Thus, the only real issue presented by this appeal is whether the trial court abused its discretion in ordering that custody of Tina remain with the Kearneys pending adoption. Our holding on this issue is dispositive of the appeal.

"The use of habeas corpus to obtain custody was established at an early date in this state. When so used, the issue is not the illegality of the confinement, as is normally the case, but rather what is best for the child." 2 Stephenson, Conn. Civ. Proc. § 259, p. 1063 (1971); *Adamsen* v. *Adamsen,* 151 Conn. 172, 178, 195 A.2d 418 (1963); *Pfeiffer* v. *Pfeiffer,* 99 Conn. 154, 157, 121 A. 174 (1923). The burden of proving a change to be in the best interest of the child rests on the party seeking the change. Stephenson, supra, 1070; 39 Am. Jur. 2d, Habeas Corpus, § 152 (1968). Although the judgment of the trial court "denies" the Santacroces' prayer for a writ of habeas corpus, technically the writ *was* issued and the child was brought before the court. There was a full hearing to determine

whether a change in custody would be in the best interest of the child. It was rather the relief requested, a change in custody, which was denied.

In support of their claim that the evidence failed to support the trial court's conclusion that it was in the child's best interest to remain with the Kearneys, the intervening defendants have resorted to a wholesale attack on the findings. Corrections of findings of fact will only be made where there has been a refusal to find a material fact which was admitted or undisputed, where the finding is in language of doubtful meaning, or where a material fact has been found without evidence. Practice Book § 628. Findings will not be corrected by adding facts which will not affect the result or to substitute counsel's language for that of the court. *State* v. *Watson,* 165 Conn. 577, 589 n.1, 345 A.2d 532 (1973); *Cleveland* v. *Cleveland,* 165 Conn. 95, 96, 328 A.2d 691 (1973); *Arcari* v. *Dellaripa,* 164 Conn. 532, 534, 325 A.2d 280 (1973); Maltbie, Conn. App. Proc. § 157. None of the additions or corrections requested would in any way affect the outcome, and they are therefore refused.

"It is settled that the determination of the custody of a minor child rests largely in the discretion of the trial court, and its decision cannot be overridden unless it abused its discretion." *Simons* v. *Simons,* 172 Conn. 341, 348, 374 A.2d 1040 (1977); *Pfeiffer* v. *Pfeiffer,* supra, 157. Here, the parties stipulated that the state was not questioning the capabilities, qualifications or credentials of either set of parents. The court concluded that both the Santacroces and the Kearneys were deserving of consideration, that both were good parents, and that both had been wronged by the action of the

state. The issue before the trial court was thus reduced to the question of whether a *move* would be in the best interest of the child.

The court heard testimony from psychiatrists and social workers on the question of whether Tina should be moved. Although the Kearneys had specifically requested in their complaint that an attorney be appointed to represent Tina's interest, such an appointment was never made, and none of the parties pursued it further. Generally, appointment of counsel for minor children rests within the discretion of the court. See General Statutes §§ 46-43 and 46-47. It is apparent from the record that every attempt was made to expedite the proceedings in this case because time was of the essence. The hearing was held immediately after the answers and counterclaims of the state and intervening defendants were filed. It may be inferred that appointment of an attorney for the child was dispensed with in the interest of speed and efficiency. In retrospect, this was unfortunate because none of the witnesses who testified had seen *both* the Kearneys and the Santacroces, and therefore none was in a position to compare effectively the child's adjustment in the two homes. Had an attorney been appointed for the child, the court would likely have been in a better position to evaluate the best interest of the child. In a situation such as this, a short delay for the purpose of appointing an attorney is preferable to allowing the child to go unrepresented, and an attorney should be appointed as a matter of course. However, the failure of the court to appoint an attorney was not such a clear abuse of discretion that the Santacroces would be entitled to reversal on that ground.

Having heard the evidence presented by all the parties, the court concluded that it was in the best interest of the child that she be left in the Kearneys' home. A conclusion of the trial court must be allowed to stand if it is reasonably supported by the relevant subordinate facts found and does not violate law, logic or reason. *Sanchione* v. *Sanchione,* 173 Conn. 397, 402, 378 A.2d 522 (1977); *Spicer* v. *Spicer,* 173 Conn. 161, 163, 377 A.2d 259 (1977). As previously stated, in deciding what is in the best interest of the child, the court is vested with broad discretion. The trial court had the advantage of observing the parties and the witnesses. "[T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." *Morrill* v. *Morrill,* 83 Conn. 479, 491, 77 A. 1 (1910); *Spicer* v. *Spicer,* supra, 162; *Simons* v. *Simons,* supra, 349; *Palmieri* v. *Palmieri,* 171 Conn. 289, 290, 370 A.2d 926 (1976); *Adamsen* v. *Adamsen,* supra, 180; *Pfeiffer* v. *Pfeiffer,* supra, 157.

The Santacroces sought relief in the form of a writ of habeas corpus. Once the writ issued, they had the burden of proving that a change in custody would be in the child's best interest. The facts as found by the trial court in making this difficult and heartbreaking decision would have supported an award of custody to either the Santacroces or the Kearneys. The court concluded that a move would

not be in Tina's best interest. The findings amply support this conclusion, and the court did not abuse its discretion in ordering that the Kearneys retain custody of Tina pending adoption.

There is no error.

In this opinion the other judges concurred.