JOSEPH NYE ET AL. *v.* MARK J. MARCUS
(12714)

HEALEY, SHEA, DANNEHY, CALLAHAN and QUINN, Js.

Argued October 4—decision released December 24, 1985

*Shelley White,* with whom were *Shelley Geballe* and, on the brief, *Martha Stone,* for the appellants (plaintiffs).

*Laurie Adler,* assistant attorney general, with whom were *Patricia Pac,* assistant attorney general, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Robert W. Garvey,* assistant attorney general, for the appellee (defendant).

*Laurajean Golden* filed a brief as amicus curiae.

*Stephen Wizner, Sally Zanger, Miriam Berkman, Mary A. McCarthy* and *John L. Pottenger, Jr.,* filed a brief as amici curiae.

CALLAHAN, J. This is an appeal by the plaintiffs, Joseph and Rhonda Nye, from the quashing of a habeas corpus petition. On appeal, the plaintiffs claim that the trial court erred in: (1) quashing the plaintiffs' petition on the ground that the plaintiffs, as foster parents, lacked standing to maintain such an action; and (2) refusing immediately to appoint counsel for the minor child notwithstanding the alleged need for and the availability of competent counsel. We find no error.

A statement of the background in this case is necessary to place the issues in proper context. The minor child, Jennifer, whose custody is in dispute, was born June 9, 1984. When Jennifer was about two months old, the department of children and youth services (hereinafter DCYS) placed her with the Nyes for foster care. She resided continuously with them from August 7, 1984, until the conclusion of the court proceedings on March 22, 1985. It is unclear whether the Nyes signed the standard agreement for foster care used by DCYS before Jennifer was placed with them. The Nyes, however, are familiar with the provisions of such a contract and they acknowledge that generally a contract is signed by the parties to a foster care placement. The standard agreement contains the statement that the child is placed with the foster parents "on a temporary care basis only and it is clearly understood that said child is not placed with [the foster par-

ents] for either adoption or long-term foster care." On December 11, 1984, the parental rights of the natural parents were terminated by consent of the natural parents and the defendant commissioner of DCYS was appointed as the statutory parent. See General Statutes § 45-61f. In February, 1985, DCYS informed the Nyes that Jennifer was to be taken from their foster care because another couple had been selected by DCYS as adoptive parents for Jennifer. Neither the Nyes nor the adoptive parents have any blood relationship to Jennifer.

On March 6, 1985, the Nyes filed a writ of habeas corpus, together with a complaint and an application for a temporary injunction, concerning the proposed removal of Jennifer from their foster care. At that time, the trial court granted the temporary injunction enjoining DCYS from removing Jennifer. In March, 1985, the trial court declined to act on the Nyes' motion for appointment of counsel for Jennifer and granted the commissioner of DCYS' motion to quash the habeas corpus petition, concluding that the court had no jurisdiction because the Nyes lacked standing to petition for habeas corpus relief. The trial court also dissolved the temporary injunction. The Nyes' request for a stay of execution of the order quashing the habeas corpus petition and dissolving the temporary injunction pending appeal was denied. This ruling returned physical custody of Jennifer to DCYS as the statutory parent. DCYS removed Jennifer from the care and physical custody of the Nyes and placed her with the adoptive parents.

This action for a writ of habeas corpus was brought pursuant to General Statutes § 52-466.[1] A habeas

---

[1] "[General Statutes] Sec. 52-466. APPLICATION FOR WRIT OF HABEAS CORPUS. SERVICE. RETURN. (a) An application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial

corpus action has long been recognized in Connecticut as the proper procedure to determine the custody of a minor child. *Kearney* v. *State,* 174 Conn. 244, 249, 386 A.2d 223 (1978); *Adamsen* v. *Adamsen,* 151 Conn. 172, 178, 195 A.2d 418 (1963); 2 Stephenson, Conn. Civ. Proc. § 259. In such an action, the paramount issue is the best interests of the child. *McGaffin* v. *Roberts,* 193 Conn. 393, 403, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985). This court is concerned with the best interests of Jennifer. That concern does not mean, however, that we can ignore the necessity that the Nyes have standing to bring a petition for a writ of habeas corpus.

Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties. *Maloney* v. *Pac,* 183 Conn. 313, 320, 439 A.2d 349 (1981); *Shaskan* v. *Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975). It has long been recognized that a person is not "entitled to set the

district in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty.

"(b) The application shall be verified by the affidavit of the applicant for the writ alleging that he truly believes that the person on whose account the writ is sought is illegally confined or deprived of his liberty.

"(c) The writ shall be directed to some proper officer to serve and return, who shall serve the same by putting a true and attested copy of it into the hands of the person who has the custody of the body of the person who is directed to be presented upon the writ. If the officer fails to make immediate return of the writ, with his actions thereon, he shall pay fifty dollars to the person so held in custody.

"(d) Any judge of the superior court to whom an application for a writ of habeas corpus is made may make the writ returnable before any other judge of the court, the consent of the other judge being first obtained; and the other judge shall thereupon proceed with the matter with the same authority as though the application had been originally presented to him.

"(e) If the application is made to a judge, the judge may certify the proceedings into court and the case shall thereupon be entered upon the docket and proceeded with as though the application had originally been made to the court."

machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity." *Bassett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294 (1953). Standing is aptly described as "a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests . . . ." *Maloney* v. *Pac,* supra.

## I

In the present case, the plaintiffs assert two grounds in support of their claim of standing. They first claim that they have standing as foster parents to assert their own interest in the maintenance of their family relationship with Jennifer. Secondly, the plaintiffs argue that they have standing derivatively as foster parents to assert the interests of their foster child because of the nature of their relationship with the child and because to deny them standing effectively eliminates the child's ability to assert her own interest.

## A

We first address the plaintiffs' claim of standing as foster parents to assert their own interest. The plaintiffs argue that their interest in the protection of their foster parent relationship with Jennifer is sufficient to support their claim of standing. They assert that this court in *Kearney* v. *State,* 174 Conn. 244, 386 A.2d 223 (1978), implicitly held that foster parents have standing because there foster parents were permitted to intervene in a custody suit involving their foster child. *Kearney,* however, can be distinguished from the present case because the initial proceeding in that case was not a proceeding on a habeas corpus petition. Instead it was an action for an injunction brought by adoptive parents against DCYS on the basis of a contract to adopt. A writ of habeas corpus was sought only

in a counterclaim brought by the foster parents. The foster parents in *Kearney* did not institute the suit but were merely permitted to intervene as defendants. In the present case, the Nyes are bringing the custody of Jennifer into question by initiating the action rather than by simply intervening in a preexisting lawsuit. Furthermore, even if the differences between the two cases are ignored, the court in *Kearney* never addressed the issue of standing and specifically never considered whether foster parents have standing to bring a habeas corpus proceeding. We therefore do not find *Kearney* controlling on this issue.

In *Doe* v. *Doe,* 163 Conn. 340, 345, 307 A.2d 166 (1972), this court held that only parents or legal guardians of a child have standing to seek habeas corpus relief. In that case, a man who had supported and lived with a child and her mother for ten years brought a habeas corpus action to determine the right of custody and to secure visitation with a minor child. On appeal he challenged only that part of the judgment relating to visitation rights. The court denied him standing because he was not the child's parent or legal guardian. *Doe* v. *Doe,* supra. Standing was denied in that case even though the plaintiff had extensive contact and emotional ties with the child. *Doe* and the present case are similar because in both cases the claim of standing was based on an emotional relationship with the child rather than on a biological or legal guardian relationship.

Foster families differ from biological families in that they have their source in state law and contractual arrangements. *Smith* v. *O.F.F.E.R.,* 431 U.S. 816, 845, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977). Foster families do not have the same rights as biological families or adoptive families. Rather, the expectations and entitlements of foster families can be limited by the state. *Smith* v. *O.F.F.E.R.,* supra; see *Drummond* v. *Fulton*

*County Department of Family & Children's Services,* 563 F.2d 1200, 1207 (5th Cir. 1977). Biological and adoptive families have a liberty interest in the integrity of their family unit which is part of the fourteenth amendment's right to familial privacy.[2] *Smith* v. *O.F.F.E.R.,* supra, 842. Foster care arrangements of the nature and duration considered in the present case do not have this constitutionally protected liberty interest. *Kyees* v. *County Department of Public Welfare,* 600 F.2d 693, 698–99 (7th Cir. 1979); *Drummond* v. *Fulton County Department of Family & Children's Services,* supra. Further, the plaintiffs had no basis for a justifiable expectation that their relationship with Jennifer would be anything but temporary. See *Drummond* v. *Fulton County Department of Family & Children's Services,* supra. We hold, therefore, that under these circumstances the Nyes do not have standing as foster parents to assert their own interest in the maintenance of their family relationship with Jennifer. They do not have a liberty interest and their emotional relationship with the child, which was acquired through the temporary foster placement, is too tenuous a basis to afford standing to institute a habeas corpus proceeding against the child's statutory parent and legal guardian.

### B

Next, we address the Nyes' claim of standing based on their assertion of Jennifer's interests. The Nyes argue that Jennifer has an interest in both the continuity of care she receives and in a stable home environment, which should be given judicial protection. The Nyes also argue that they should be the ones to

---

[2] It has been reaffirmed by the United States Supreme Court that "freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Board of Education* v. *LaFleur,* 414 U.S. 632, 639–40, 94 S. Ct. 791, 39 L. Ed. 2d 52 (1974).

assert Jennifer's interests because she does not have any natural parents to represent her and only they as foster parents "are both capable of and willing to assert [Jennifer's] interests . . . ." We do not share the plaintiffs' view. As the "statutory parent" of Jennifer, DCYS provides for her welfare, which includes acting in her best interests. See General Statutes §§ 17-410 et seq., 45-61h. The commissioner of DCYS has been given authority by the legislature to determine custody of children committed to his care. See General Statutes §§ 45-61 et seq., 17-32 et seq. It is clear that the legislature intended that DCYS safeguard Jennifer's best interests regarding custody. The Nyes, therefore, are incorrect in saying that they are the only ones able to assert and protect Jennifer's best interests.

Furthermore, although the plaintiffs argue that they will assert Jennifer's interests, the plaintiffs' interests may well be in conflict with Jennifer's interests. "[I]t is by no means obvious that foster parents and foster children have the same interest in a continuation of their relationship. When the child leaves the foster family, it is because the agency with custody of him has determined that his interests will be better served by a new home, either with his natural parents, adoptive parents, or a different foster family. Any assessment of the child's alleged deprivation must take into account not only what he has lost, but what he has received in return." *Smith* v. *O.F.F.E.R.*, supra, 857 n.1 (Stewart, J., concurring). Therefore, the foster parents are not an appropriate neutral party to assert the interests of their foster child in a habeas corpus action. Accordingly, the Nyes do not have standing to assert the interests of Jennifer.

We find no error in the dismissal of the plaintiffs' habeas corpus action because the plaintiffs lacked standing. To hold otherwise would open the door to any interested individual to litigate what is in the best inter-

ests of a foster child who is a candidate for adoption. It would also enable foster parents to delay the adoption of a child whenever they disagree with a placement decision of DCYS. This would undermine the adoption process in Connecticut by interfering with the performance of duties entrusted to DCYS by the legislature. See General Statutes §§ 45-61h, 45-61i, 45-63. This court is concerned with maintaining the integrity of the statutory scheme of foster care and adoption mandated by the legislature and therefore declines to grant standing to foster parents in the position of the plaintiffs to institute a habeas corpus action.

## II

The Nyes' second claim is that the trial court erred in refusing to appoint counsel for Jennifer immediately. They assert that independent counsel for minor children should be appointed in all contested custody proceedings and that such appointment is mandatory unless there are countervailing considerations. This court recognizes the importance generally of appointing counsel for minor children in custody proceedings. See *Yontef* v. *Yontef,* 185 Conn. 275, 284, 440 A.2d 899 (1981); *Kearney* v. *State,* supra, 251. It is not, however, mandatory that counsel be appointed in every situation. "Generally, appointment of counsel for minor children rests within the discretion of the court." *Kearney* v. *State,* supra; see General Statutes § 46b-54; *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 540, 429 A.2d 801 (1980).

The proceedings for which counsel would have been appointed in the present case were jurisdictional. As such, the trial court said that it was not "necessary or appropriate to appoint counsel for the minor child at this stage in the proceedings." The trial court's decision not to appoint counsel for Jennifer in the jurisdictional proceedings was well within the court's proper

exercise of discretion. The trial court therefore did not err in refusing to appoint counsel for Jennifer immediately.

We find no error.

In this opinion the other judges concurred.