[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
This is an action brought by the plaintiff, the Hartford Federation of Teachers [hereinafter the Union], seeking to enjoin CT Page 8725 the defendants, Hartford Board of Education [hereinafter the Board], the City of Hartford [the City] and certain officers of the City from negotiating a contract with Education Alternatives, Inc. [EAI] for the management of Hartford's public schools. On August 15, 1994, the court granted EAI's motion to be made a party defendant to this action. The City and EAI now move to dismiss the plaintiff's complaint on the ground that the plaintiff lacks standing to bring this action because: (1) the plaintiff's submission in response to the Board's Request for Proposals was not responsive; (2) the plaintiff has not alleged any injury or harm it has sustained or might sustain; (3) the court does not have jurisdiction to declare injunctive relief because this is a labor dispute within the meaning of General Statutes § 31-115(c); and (4) the Union's selection of an improper return date deprives the court of subject matter jurisdiction.
HISTORY
The pleadings disclose the following facts. On June 1, 1994, the City issued a Request For Proposals [RFP] for the management of the Hartford Public School System. This RFP was in response to the Board's prior determination to contract with an outside agency to manage its schools. On page two of the RFP the City set forth the following introduction: "In an effort to improve student achievement, maximize the school district's resources, and provide a more stable financial picture over the long term, the Board of Education of the City of Hartford . . . is seeking a contractor which is interested in managing the entire school system of the City of Hartford in accordance with and subject to the terms of this RFP." The RFP required, among other things, that each respondent submit: (1) a letter of transmittal accepting all the terms and conditions of the RFP; (2) a detailed proposal outlining how the respondent would address each need as outlined in the RFP; and (3) documents describing the respondent's financial stability.
On June 9, 1994, the Board of Education held a preproposal conference to advise potential respondents of the Board's proposal requirements. A videotape of this conference was admitted into evidence and played before the court on August 23, 1994. At the conference, the chairman of the selection committee, Priscilla Herrington, emphasized that it was critical for the respondents to follow the guidelines of the RFP, including the signed letter of transmittal accepting the terms CT Page 8726 and conditions of the RFP. Ms. Herrington warned that a failure to comply strictly with these requirements would subject the proposal to rejection as nonresponsive. Ms. Herrington further commented that the selection committee sought to encourage creative proposals for managing the school system and that there were no limits on alternatives that the selection committee would consider in choosing a manager.
DISCUSSION
The motion to dismiss is the vehicle by which a defendant can contest the jurisdiction of the court. Practice Book § 143 provides that a motion to dismiss may be used where the court lacks jurisdiction over the subject matter at issue. If the plaintiff does not have a genuine and legitimate interest in a case, a challenge to the party's standing is an appropriate means to establish lack of jurisdiction. "The question of standing is essentially one of aggrievement." Beckish v. Manafort, 175 Conn. 414,419, 399 A.2d 1274 (1978).
"Standing is the legal right to set the judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has . . . some real interest in the cause of action . . . or interest in the subject matter of the controversy." Ardmare Const. Co. v. Freedman, 191 Conn. 497,501, 467 A.2d 674 (1983) "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." Tomlinson v. Board of Education, 226 Conn. 704, 717,629 A.2d 333 (1993). In Nye v. Marcus, 198 Conn. 138 (1985), the Supreme Court stated: "Standing focuses on whether a party is a proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties. . . . Standing is aptly described as `a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests.'" (Citations omitted).
198 Conn. at 141-42.
Thus, standing is a jurisdictional question. "It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction." Unisys Corp. v. Dep't of Labor,220 Conn. 689, 693 (1991).
Because lack of standing is a jurisdictional issue, it must be addressed before any further action may be taken in a case. CT Page 8727 "[W]henever a jurisdictional challenge is brought to the attention of the court that issue must be decided before further action can be taken." Aaron v. Conservation Comm., 178 Conn. 173,178 (1979). The court has consistently required that jurisdictional questions be disposed of immediately upon the court learning of them. Middletown v. Hartford Electric LightCo., 192 Conn. 591, 595 (1985).
A claim of lack of jurisdiction over the subject matter cannot be waived. Practice Book § 145.
The standing doctrine is commonly applied to dismiss challenges to awards of public contracts. See, e.g., ArdmareConst. Co. v. Freedman, 191 Conn. 497, 501 (1983). Standing to challenge the award of a public contract is granted only sparingly, due to the inevitable delay it causes to important public projects. Id., 501.
The usual rule in Connecticut is that disappointed bidders have no standing to complain of bid awards in public contracts, because bidding laws "are enacted to . . . benefit the taxpayer, not the bidders." Ardmare, supra, 504. In Spiniello ConstructionCo. v. Manchester, 189 Conn. 539 (1983), however, the court created an exception to this standing rule. Where "fraud, corruption or favoritism" is alleged, an unsuccessful bidder may bring an action to challenge the bid. Spiniello, supra, p. 544. However, a bidder whose bid is unresponsive to the RFP has no standing to challenge the award. Kennedy Temporaries v.Comptroller of the Treasury, 468 A.2d 1026, 1033 (Md.App. 1984) (a bidder has "no legal status to challenge the award" of a public contract where the bid fails to qualify as responsive.);F-M Asphalt v. N.D. State Highway Dept., 430 N.W.2d 344 (N.D. 1988) (unsuccessful bidder for public contract lacked standing to sue where "bid was nonresponsive on its face.").
A request for proposals and an invitation to bid are different means of obtaining the same result, i.e., the best deal for the taxpayer whether for materials or professional services. The difference between a request for proposals and an invitation to bid is well defined. As stated in System Development Corp. v.Department of Health and Rehabilitation Services, 423 S.W.2d 433, 434 (Fla.App. 1982), "[I]mplicit in the definition of an RFP is the underlying rationale that, in some types of competitive procurement, the agency may desire an ultimate goal but cannot tell the offerors how to perform toward achieving that goal; thus CT Page 8728 a ready distinction arises between an RFP and an IFB [invitation for bids]." Typically, an IFB identifies a solution to the problem. In this case, the ultimate goal of the RFP is a manager for the Hartford School System.
Both the RFP and the IFB are authorized by the City Charter. The RFP is to be used to obtain professional services and this request for managerial services fits well within the definition of professional services in Sec. D03-060 of the City purchasing manual.
The court is aware that most of the principles of law outlined above which refer to standing pertain to competitive bid procedures, but the underlying policy considerations are applicable to both the IFB and the RFP. The court is of the opinion that the law governing standing in respect to bids is as applicable to an RFP as it is to a competitive bid in the context of this case.
Since the Union did allege favoritism in its complaint, the question of jurisdiction and standing raised by the motions to dismiss becomes a question of whether or not the Union's reply to the RFP was responsive.
In the opinion of the court, the Union's proposal was unresponsive and, like an unresponsive bid, deprives the plaintiff of standing to contest the award of a contract to another party. Among other facts considered by the court are the following: 1. On or about July 12, 1994 . . . when representatives from the Hartford Federation of Teachers were interviewed by the selection committee. . . Susan Davis, president of the Hartford Federation of Teachers, indicated that the document submitted by the Hartford Federation of Teachers was not a proposal to manage the Hartford Public Schools. 2. The document submitted by the Hartford Federation of Teachers in fact did not propose to manage the schools, but instead outlined a plan with which to achieve beneficial educational reform. 3. The cover letter, signed by Susan Davis, which accompanied the Union proposal states "[t]he Hartford Federation of Teachers is submitting this document in response to RFP #4071 but it is nota bid to manage the Hartford Public School System." (emphasis added). 4. Finally, the addendum to the Union's proposal states "[i]t must be stressed over and over that any agreement along these lines is predicated on the rejection of an outside company
being brought in to operate the Hartford Public Schools . . ." CT Page 8729 (emphasis added.)
In opposition to the defendants' motions to dismiss, the Union argues that the its proposal was responsive to the broad outline of the RFP. The Union contends that the RFP itself asked for alternative plans for managing the school system. The Union argues that Ms. Herrington further expanded the range of alternative proposals at the pre-proposal conference. Finally, the Union argues that the defendants consistently treated the Union as a viable, and therefore responsive, proposer. The Union therefore contends that its proposal was broadly responsive to the RFP.
However, the court concludes that the broad language encouraging creativity in management proposals is applicable only within the framework of the original purpose or "goal" of the RFP. Thus, an alternative proposal must comply with the general spirit and purpose behind the Board's effort to contract for the management of Hartford's schools.
In addition to the declarations mentioned above, the Union did not provide a letter of transmittal accepting the terms and conditions of the RFP. The Union did not include any documents demonstrating that the proposed partnership was financially stable or had the resources to invest in the school system. It failed to include an audited financial statement, a fee structure, an exit plan, a transition plan, written assurance that it will have sufficient staff and many other requirements. Most significantly, the Union's proposal explicitly rejected the entire concept of outside management.
The court concludes that the Union's failure to address these essential elements of the RFP render it completely unresponsive. The proposal was unresponsive to the RFP's plain direction that it required a financially stable management organization capable of sustaining long term investment into the public school system. The proposal was further unresponsive in that it was predicated on rejecting the very principle upon which the RFP sought proposals, i.e., a contract to manage the Hartford school system. The court concludes that the Union's proposal was nonresponsive on its face and the Union, therefore, has no standing to invoke the jurisdiction of this court. F-M Asphalt v. N.D. StateHighway Dept., 430 N.W.2d 344 (N.D. 1988). Therefore, the court must dismiss this case for lack of jurisdiction since the plaintiff, as an unresponsive proposer, lacks standing. The CT Page 8730 motion to dismiss is GRANTED and the case dismissed.
The defendants also challenge the plaintiff's standing on the basis of the admittedly incorrect return date on the complaint which lists August 13, 1994, a Saturday, rather than the required Tuesday. The plaintiff would excuse the incorrect date on the ground that in this case it should be replaced by the date certain of August 8, 1994 for the show cause hearing pertaining to the injunction and maintains that the fact that the defendants appeared constitutes a waiver of any right to claim lack of jurisdiction. As pointed out above, a claim of lack of subject matter jurisdiction cannot be waived.
The plaintiff maintains that the date is correctable. Although section 52-72 C.G.S. provides for correction of a return date, a number of Connecticut Appellate Court cases have consistently held that "plaintiff cannot amend its civil process because the return date had already passed at the time the motion to dismiss had been filed in the trial court and therefore, the court did not have jurisdiction to consider the matter."Concepts Associates, Ltd. v. Board of Tax Review, 31 Conn. App. 793
(1993) and cases therein cited. See also Danziger v.Shaknaitis, 33 Conn. App. 6 (1993). In this case the plaintiff has not attempted to amend. Thus the plaintiff's case should be and is dismissed.
The defendants' claim that the court does not have jurisdiction to declare injunctive relief because this is a labor dispute within the meaning of section 31-115 (c) C.G.S. was not pursued at the hearing and in oral argument and this will not be considered by the court at this time.
Case dismissed.
Hale, State Trial Referee