[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue presently before the court concerns the extent to which nonparent third parties have standing to initiate in Superior Court an action against a single parent seeking custody of a minor child.
The plaintiffs, Mary Beth Greco and James Greco, are the maternal grandparents of James V. Greco, who is four years old. On February 16, 2001, the plaintiffs filed with the court an ex parte application for temporary custody and a complaint seeking sole custody of James. The mother of James, Wendy Greco, was named as the sole defendant. Attached to the application were four separate affidavits signed respectively by the plaintiff Mary Beth Greco, the defendant's brother, the defendant's sister-in-law, and a friend of the defendant.
The affidavits allege that the defendant and James lived consistently with the plaintiffs from James' birth until October 15, 200 when the defendant and James moved without explanation or warning; that the defendant has psychological problems for which she refuses to take prescribed medication or seek proper counseling; that the defendant has exhibited "gross neglect" of James, including failing to keep any doctor appointments for James or to have him properly immunized, allowing his medical insurance to lapse, failing to support him financially and allowing him to roam unsupervised, unclean and unfed. The affidavits also allege that the defendant and James currently live in the home of Gina and John Champagne, who use and deal illegal drugs and who maintain a physically and verbally abusive relationship. The affidavits also claim that the defendant has entrusted the care of the child to Vincent Lee Greco[1], who is biologically a woman living as a man and who has fraudulently listed his name on the child's birth certificate as the child's father. The affidavits further allege that Vincent Lee Greco is an alcoholic with significant psychological problems and he has been verbally and physically abusive to his girlfriend in the past.
On February 16, 2001, the court, Domnarski, J., granted ex parte temporary custody of the minor child James V. Greco to the plaintiffs. The matter was set down for a hearing on March 22, 2001 with respect to the order of temporary custody. On March 16, 2001, the defendant filed a motion to dismiss this action on the ground that the court lacks subject matter jurisdiction over a custody action filed by a party who is not a CT Page 7142 parent of the child. It is this motion to dismiss that is presently before the court.
The defendant asserts that the plaintiffs lack standing to bring a custody action because no controversy presently exists in court concerning custody. The defendant maintains that General Statutes §46b-56 and § 46b-57 require the existence of a pending controversy before a nonparent third party may assert claims to custody. The defendant further asserts that the plaintiffs lack standing to bring a habeas action for custody because such an action is limited to parents, legal guardians, foster parents and adoptive parents.
The plaintiffs argue that they have the right to initiate a custody action pursuant to General Statutes § 46b-56, § 46b-56b and § 46b-57. They assert that these statutes authorize custody actions by nonparent third parties, particularly in instances where the third parties claim that the child has been neglected and the family disrupted. The plaintiffs also contend that members of a child's biological family have standing to bring a habeas petition seeking custody.
I have determined that, even assuming the circumstances as alleged by the plaintiffs to be true, this court lacks subject matter jurisdiction to entertain the custody action filed by the plaintiffs.
In ruling on a motion to dismiss, the court must take the facts to be those alleged in the complaint, including those necessarily implied, construing them in a manner most favorable to the pleader. Pamela B. v.Ment, 244 Conn. 296, 308 (1998). The court will also accept as true the facts alleged in the affidavits supporting the plaintiffs' ex parte motion for temporary custody since the defendant has not contested or disputed those factual claims for purposes of the motion to dismiss.Knipple v. Viking Communications, 236 Conn. 602, 608 (1996).
The issue of standing implicates a court's subject matter jurisdiction. "It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion." Weidenbacher v. Duclos, 234 Conn. 51,61-62 (1995). "Moreover, when standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the party has a legally protected interest which may be remedied." (Internal quotation marks and citations omitted.) In Re Jonathan M., 255 Conn. 208, 219 (2001). If a party lacks standing, the court is without subject matter jurisdiction to consider the action Weidenbacher v. Duclos, supra, 234 Conn. 54 n. 4. CT Page 7143
The plaintiffs claim that they have a statutory and common law right to initiate a judicial action for custody of their grandson under the circumstances here, where the mother is a single parent and the child is being neglected and living in a potentially harmful situation. The plaintiffs' right to seek court intervention in this matter must be analyzed against the backdrop of the fundamental right to family integrity held by the defendant and her child.
The right of parents to raise their children free from excessive government interference is an acknowledged common law right in Connecticut. Castagno v. Wholean, 239 Conn. 336, 343 (1996). The right to family autonomy and privacy is also a well-recognized constitutional right. "Our law recognizes that parents have significant constitutionally protected rights to the companionship, care, custody and management of their children. This right to family integrity includes the most essential and basic aspect of familial privacy — the right of the family to remain together without the coercive interference of the awesome power of the state." (Internal quotation marks and citations omitted.) Lehrer v. Davis, 214 Conn. 232, 236-37 (1990). See also PamelaB. v. Ment, 244 Conn. 296, 309 (1998); Castagno v. Wholean, supra239 Conn. 344; and In Re Juvenile Appeal (83-CD), 189 Conn. 276, 284
(1983). "The rights to conceive and to raise one's children have been deemed essential basic civil rights of man and rights far more precious than property rights. It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. . . . This right to family integrity does not, however, belong only to the parents. Rather, it encompasses the reciprocal rights of both parent and children. It is the interest of the parent in the companionship, care, custody and management of his or her children, and of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association, with the parent. (Internal quotation marks and citations omitted.) Pamela B. v.Ment, supra, 244 Conn. 309-10. "The right of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." Stanley v. Illinois, 405 U.S. 645, 651 (1972). See alsoTroxel v. Granville, 530 U.S. 57, 66 (2000) ("[I]t can not now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.")
The common law and constitutional right to family integrity places limits on the steps the state can take to interfere with a parent's custody of a child. Pamela B. v. Ment, supra, 244 Conn. 310. See alsoCastagno v. Wholean, supra 239 Conn. 344-46 and In Re Juvenile Appeal
CT Page 7144 (83-CD), supra, 189 Conn. 285-86. Courts have been instructed to keep these constitutional limitations in mind when any form of coercive intervention is sought that would disrupt the integrity of the family unit. Pamela B. v. Ment, supra, 244 Conn. 310.
The plaintiffs first claim that General Statutes § 46b-56, §46b-56b and § 46b-57 grant them the right to file an action for custody of their grandson.[2] They argue that these statutes authorize third parties to bring court action against a parent for custody of a minor child. The plaintiffs rely on the language of § 46b-56 which states that "in any controversy before the Superior Court as to the custody or care of minor children" the court may assign custody of any child to a third party and the provisions of § 46b-57 which authorize any third party to intervene in a custody controversy. The plaintiffs also point to the language of § 46b-56b which provides that there shall be a presumption that it is in the best interest of the child to be in the custody of the parent in any dispute as to the custody of the child involving a parent and a nonparent as implying the right of nonparents to bring a custody action.
A court's task when confronted with issues of statutory interpretation is well established. "When we set out to interpret the meaning of a statute, our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter."Castagno v. Wholean, supra, 239 Conn. 339.
The language and legislative history of the various statutes cited by the plaintiffs do not support the plaintiffs' claim that these statutes authorize the initiation of custody actions by third parties against a parent.
General Statutes § 46b-56 (a) provides that "In any controversy before the Superior Court as to the custody or care of minor children, and at any time after the return day of any complaint under section 46b-45, the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation . . . [T]he court may assign the custody of any child to the parents jointly, to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable." The plaintiffs assert that the language authorizing the court to assign custody of any child to a third party grants the court subject matter jurisdiction over a third party CT Page 7145 complaint for custody. Recognizing that an unbridled grant of authority to a third party to file a custody action against a parent would raise constitutional concerns with respect to the parent's right to family integrity, cf. Castagno v. Wholean, 239 Conn. 336 (1996) and Troxel v.Granville, 530 U.S. 57 (2000), the plaintiffs limit their claim as to the reach of the statute's authority to situations where the child is living with a single parent who is allegedly neglecting the child.
The fundamental flaw in the plaintiffs' argument is that it ignores the language of the statute which conditions the exercise of the court's authority to award custody to a third party on the existence of a controversy before the Superior Court as to the custody or care of minor children or a complaint for annulment, dissolution of marriage or legal separation under section 46b-45. That language requires that there already be pending before the court a controversy involving custody of the minor children before a third party can request custody. The legislative history surrounding § 46b-56 supports this view of its limited reach.
The roots of the provisions of § 46b-56 extend to 1883. On March 21, 1883, the Connecticut General Assembly enacted legislation which provided that "in all controversies before the superior court between husband and wife as to the custody of children of the marriage, the court shall have power to assign the custody of such children to either parent . . ." Acts 1883, Chapter XXVIII. In 1922, the Connecticut Supreme Court was called upon to interpret the meaning of this statutory provision, then codified as § 5291 of the General Statutes.
In Dunham v. Dunham, 97 Conn. 443 (1922), the plaintiff and the defendant had obtained a divorce in 1915 in Massachusetts. There was one child issue of the marriage. The Massachusetts divorce decree gave custody of the child to the plaintiff mother from the first Monday of September to June 15 each year and to the defendant father the remainder of the year. Both parties subsequently moved to Connecticut and the plaintiff filed a petition in the Connecticut Superior Court for exclusive custody of the child. The Connecticut Supreme Court reversed the trial court's determination that it had jurisdiction over the action. The Supreme Court held that the statute limited the jurisdiction of the superior court to custody proceedings that were incidental to a pending action. "We think that in this statute the words `controversies before the Superior Court' were plainly intended to mean `controversies pending in the Superior Court,' and that the action of the court or the order of the judge relating to the custody of the children is restricted to such as may be made in a proceeding incidental to a pending action. That is, the court's jurisdiction to entertain a petition for relief of this kind and to grant its prayer is a jurisdiction already acquired in an original CT Page 7146 and independent action pending in the court. Whether this statute makes any addition to the powers which the Superior Court has authority to exercise in divorce proceedings may be questionable, but it seems to us manifest that it was not intended to confer upon that court any original and independent jurisdiction over the custody of the person of a minor child." Id., 445.
In 1930, the General Assembly made minor alterations to the statute, including changing in all controversies" to "in any controversy." 1930 Rev., § 5186. In 1973, a major overhaul of the state's divorce statutes was approved by the General Assembly. See Public Acts 1973, No. 73-373, § 15. The primary purpose behind the changes was the enactment of"no fault" divorce. Section 46b-56 was enacted with the following language: "On the filing of any complaint under section 4 of this act[3] and in any controversy before the superior court between a husband and wife or former husband and wife as to the custody or care of their minor children, the court may at any time make or modify any proper order relative to custody, care, education, visitation and support of such children and may assign the custody of any of such children to either parent, or to a third party . . ." The statute retained the prior requirement that there be a "controversy before the Superior Court" and authorized for the first time the assignment of custody to a third party. The language of the bill requiring that there be a complaint before the court seeking a dissolution, annulment or legal separation, or a controversy between a husband and wife or former husband and wife clearly indicate that the changes to the statute did not allow a third party to initiate an independent action for custody.
In 1974, the General Assembly deleted the language "between a husband and wife or former husband and wife" from the statute thereby removing the limitation that the controversy before the court involve persons who were currently married and who had formerly been married. Public Acts 1974, No. 74-169, § 8. There is no support in the legislative history behind this change for the plaintiffs' claim that the purpose of the amendment was to allow nonparent third parties to initiate a custody action against a parent of the minor child. The changes enacted by Public Act 74-169 were primarily technical in nature. 17 H.R. Proc., Pt. 6, 1974 Sess., p. 2806. One of the few substantive changes made by the act was an amendment to General Statutes § 46b-61. Previously, § 46b-61
allowed any husband and wife living separately to file an action for custody of their minor children. Section 12 of Public Act 74-16 expanded the jurisdiction of the Superior Court to include complaints filed by parents living separately who were no longer married or who had never been married. 17 H.R. Proc., Pt. 6, 1974 Sess., p. 2805. Since parents who had never been married could now file a custody action pursuant to §46b-61, it appears that the changes made by § 8 of Public Act 74-169 CT Page 7147 merely conformed § 46b-56 to the changes made by § 12 of the Public Act by deleting the requirement that custody controversies involve parents who were or had been married.
The Connecticut Supreme Court in 1996 reiterated its position first articulated in 1922 in Dunham v. Dunham, supra, 97 Conn. 443, that the state's custody statute, now codified at § 46b-56, contains a threshold requirement of a pending controversy that must be satisfied before a party may seek custody of minor children. See Castagno v.Wholean, 239 Conn. 336, 346-47 (1996). The Supreme Court specifically stated that "§§ 46b-56 and 46b-57 establish the threshold requirement of a pending controversy that must be satisfied before a third party may intervene to achieve the care, custody or visitation of minor children . . ." Id. Although dicta, the Court's statement is its most recent pronouncement of its view on the issue.
Likewise, § 46b-57 fails to furnish a basis for the plaintiffs' third party custody action. General Statutes § 46b-57 states that "In any controversy before the Superior Court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or51-348a, if there is any minor child of either or both parties, the court . . . may allow any interested third party or parties to intervene upon motion." The plaintiffs contend that § 46b-57 by implication recognizes a third party's right to initiate a custody action. They assert that their position is buttressed by the fact that § 46b-57
used to read "In any controversy before the Superior Court betweenparents as to the custody of their minor children . . ." (Emphasis supplied.) In 1974, the General Assembly deleted the highlighted language. See Public Acts 1974, No. 74-169, § 10. The plaintiffs' argue that the legislature through this amendment recognized that custody actions could be brought by nonparent third parties.
The plaintiffs' claim that § 46b-57 authorizes a nonparent third party to bring a custody action against a parent has previously been rejected by the Connecticut Supreme Court. In Manter v. Manter,185 Conn. 502 (1981), the divorced adoptive father who had permitted his former wife's second husband to adopt his children sought to intervene in the dissolution action more than a year following the latter's divorce to regain custody of the children. The Connecticut Supreme Court upheld the trial court's denial of the prospective third party intervenor's motion to intervene. The Supreme Court held that the language of § 46b-57
which permits intervention "[i]n any controversy before the Superior Court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 51-348a" requires the existence of a preceding and independent controversy. Id., 505-06. The court rebuffed the movant's assertion that the opposition generated by his claim could CT Page 7148 itself furnish sufficient controversy under the statute. Id. 505.
The plaintiffs' assertion that § 46b-56b serves as a basis for a cause of action for custody by a nonparent against a parent is also not supported by the language of the statute. The statute states that "In any dispute as to the custody of a minor child involving a parent and a nonparent," there shall be a rebuttable presumption that it is in the best interest of the child to be in the custody of the parent. Nowhere in § 46b-56b is a third party authorized to initiate a custody action against a parent. The disputes over custody referred to in the statute that may arise between a nonparent and a parent are those disputes that may arise when a court considers awarding custody to a third party in a dissolution of marriage, legal separation or annulment action or other pending custody controversies pursuant to § 46b-56 and to pending custody actions in which a third party has successfully intervened under § 46b-57.
The plaintiffs' contention that § 46b-56, § 46b-56b and §46b-57 authorize them as grandparents to initiate a custody action asserting a claim that a parent in unfit is also not supported by the relationship of these statutes to other extant legislation governing custody actions. "It is axiomatic that statutes on a particular subject be considered as a whole, with a view toward reconciling their separate parts in order to render a reasonable overall interpretation." (Internal quotation marks and citations omitted.) In Re Juvenile Appeal (83-CD),189 Conn. 276, 288 (1983). The statutory construction offered by the plaintiffs would disrupt the carefully crafted system of laws governing claims of parental unfitness established by the legislature in the probate courts and juvenile courts of this state.
Pursuant to General Statutes § 45a-603, et seq., the probate court has jurisdiction over actions seeking the removal of parents as guardians of their minor children. Section 45a-614 specifically provides that "Any adult relative of the minor, including those by blood or marriage" may apply to probate court for the removal as guardian of one or both parents of the minor. The probate court may remove a parent as guardian only upon a finding based on clear and convincing evidence that (1) a parent consents to his or her removal; (2) the child has been abandoned; (3) the child has been denied the care, guidance or control necessary for his or her physical, educational, moral or emotional well-being; (4) the child has had physical injury or injuries other than by accidental means or at variance with the history given of them; or (5) the child has been found to be neglected or uncared for. General Statutes § 45a-610. The probate court statutes also require that notice be given to the Department of Children and Families, § 45a-609 (b), and that an investigation be conducted by DCF where there are allegations that the minor child has CT Page 7149 been abused or neglected, § 45a-619. Moreover, no ex parte order of temporary custody may issue when a minor child is in the custody of a parent except in the case of a child who is hospitalized as a result of serious physical illness or serious physical injury. General Statutes § 45a-607 (b).
The General Assembly has also provided the Superior Court for Juvenile Matters with jurisdiction to hear actions against parents seeking custody of minor children which involve claims that the children are neglected, uncared for or dependent. General Statutes § 46b-129. The statute limits the persons who can bring such actions to "Any selectman, town manager, or town, city, or borough welfare department, any probation officer, or the Commissioner of Social Services, the Commissioner of Children and Families or any child-caring institution or agency approved by the Commissioner of Children and Families, a child or his representative or attorney or a foster parent of a child." §46b-129 (a). The court may vest custody of the child with any suitable person or agency or commit the child to the custody of the Department of Children and Families (DCF). § 46b-129 (j). A grandparent of the child may file a motion to intervene in such action which the court shall grant except for good cause shown. § 46b-129 (c). An ex parte order of temporary custody such as was issued in this case may be granted only if there is reasonable cause to believe "(1) the child is suffering from serious physical illness or serious physical injury or is in immediate physical danger from his surroundings and (2) that as a result of said conditions, the child's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's safety . . ." §46b-129 (b). A parent has the right to a court-appointed attorney when the parent is unable to afford counsel and a hearing on any temporary custody order must be held within twenty days of the issuance of the order. § 46b-129 (b) and (d).
The plaintiffs' interpretation of § 46b-56, § 46b-56b and § 46b-57 would render superfluous the provisions of the probate court and juvenile court statutes concerning custody. A third party could avoid the strict substantive and procedural mandates of these statutes by simply initiating a custody action in superior court. An interpretation of a statute, such as that advocated by the plaintiffs, which renders a body of related statutes dispensable conflicts with the fundamental tenet of statutory construction that the legislature did not intend to enact meaningless provisions. Castagno v. Wholean, supra, 239 Conn. 346-47.
Further, acceptance of the plaintiffs' interpretation of § 46b-56, § 46b-56b and § 46b-57 authorizing third party actions for custody would require this court to imply extensive substantive provisions into the statute. As the plaintiffs recognize, a parent's CT Page 7150 constitutional right to family integrity requires that a third party satisfy a threshold requirement beyond the best interests of the child to invoke a court's jurisdiction in a custody action. Cf. Castagno v.Wholean, supra, 239 Conn. 336 and Troxel v. Granville, 530 U.S. 57, 66
(2000). In contrast to the probate court statutes and the juvenile court statutes, the plaintiffs' interpretation of the custody statutes leaves those statutes devoid of the specific circumstances under which a third party may seek court intervention.[4] The statutes also lack particulars as to the grounds beyond the best interests of the child upon which a court may award temporary custody or permanent custody to a nonparent third party. Those statutes lack the "adequate criteria" required to justify taking custody of minor children from a parent by court order. See In Re Juvenile Appeal (83-CD), 189 Conn. 276, 283 (1983).
In order for the court to accept the plaintiffs' interpretation of the custody statutes they cite and afford them the relief they seek, I would have to rewrite the statutes to save their constitutionality. Such judicial draftsmanship is unnecessary. The plaintiffs as the child's grandparents have avenues available to them to seek custody and insure that the child is not being neglected. They may file for the removal of the defendant as guardian in probate court pursuant to § 45a-603, et seq. They may also file a complaint with DCF and request that DCF file, if appropriate, a custody action in the superior court for juvenile matters pursuant to § 46b-129. If such an action is brought, the plaintiffs will have a right to intervene pursuant to § 46b-129 (c).
Finally, the plaintiffs assert that they have the right to file a habeas petition for custody of the minor child. The short answer is that the plaintiffs did not file a habeas petition in this case. More importantly, the plaintiffs lack standing to bring a habeas petition for custody. While a habeas corpus action has long been recognized as an appropriate procedure to determine the custody of a minor child, the persons entitled to file such a petition are limited. Under the common law, only parents or legal guardians of a child have standing to seek habeas corpus relief. Doe v. Doe, 163 Conn. 340, 345 (1972). See also Nyev. Marcus, 198 Conn. 138, 143 (1985). The legislature has broadened the reach of habeas relief to by statutorily authorizing foster parents and approved adoptive parents to initiate habeas actions for custody of a minor child. General Statutes § 52-466 (f).
The singular authority offered by the plaintiffs for their position that as the child's grandparents they have standing to bring a habeas petition for custody is the case of Axelrod v. Avery, 13 Conn.L.Rptr. No. 4, 124 (January 13, 1995) (Hurley, J.) In that case, the court held that the plaintiff maternal grandparents had standing to file a habeas petition seeking custody of their grandchild against the testamentary CT Page 7151 guardian after the death of their daughter, the child's mother. I do not find the reasoning of the court in Axelrod v. Avery to be persuasive. The court in Axelrod determined that members of a child's biological family have standing in habeas corpus actions for custody. The only support the court cites for its holding is dicta in Nye v. Marcus, 198 Conn. 138
(1985) that biological families have greater rights than foster families. The court glosses over the fact that the Connecticut Supreme Court in Nye reaffirmed the holding in Doe v. Doe, 163 Conn. 340, 345
(1972) that standing in habeas actions is restricted to parents and legal guardians of the minor child. See also Weidenbacher v. Duclos,234 Conn. 51, 62 (1995).
The plaintiffs as the grandparents of the minor child do not have standing under this state's custody statutes to initiate a custody action against the defendant, the child's mother. Nor do they have standing under the common law or statute to file a habeas petition for custody. Accordingly, this court lacks subject matter jurisdiction over this action and it is hereby dismissed.
BY THE COURT
Judge Jon M. Alander