[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision (Paternity Test)
On December 29, 2000, the Department of Children and Families (DCF) filed a petition alleging that Jacqueline was neglected and uncared for (Specialized Needs) child. An ex-patrte order of temporary custody (OTC) was granted simultaneously. Both documents listed the husband as co-habitating with the mother. The respondents have been married since May 21, 1995 and the husband appears on the birth certificate as the father.
At the OTC plea, this court was advised that DCF would request a paternity test. The matter was heard by the Child Protection Court on January 12, 2001 when the OTC was sustained by agreement. Each parent was to be allocated separate visitation with the child. At the CT Page 16484 neglect/uncared for petition plea on January 31, 2001 pro-forma denials are entered.
On January 12, 2001, DCF filed a motion for genetic testing of the named father which was docketed for February 9, 2001. In the absence of the mother, the hearing was continued. On May 11, 2001, the court appointed a guardian ad litem for the infant and scheduled a case status conference on the DCF motion.
In late June, 2001, the mother and husband filed formal objections to any genetic testing. The attorney and guardian of the child each support the testing.
In order to accommodate DCF's expert witness, the DCF motion was bifurcated into legal argument on November 13, 2001 and testimony on November 28, 2001. Briefs were filed by mother, husband, attorney for the child and guardian for the child.
The court grants the motion for genetic testing.
 Ia. — Standing (Presumption)
Before the court may address the merits of the DCF motion, the court must resolve whether DCF has standing, a proper party to request adjudication of the issues. Nye v. Marcus, 198 Conn. 138, 141 (1985). Standing is a legal right to invoke court jurisdiction based on an individual or representative capacity, a real interest in the court proceedings or a legal or equitable interest. Standing is a practical concept to prevent vexatious suits and assure that each right is represented. DCF must make a colorable claim of direct injury it has suffered or is likely to suffer in an individual or representative capacity to present the necessary assurance of specific adverseness and advocacy. That claim need not be based on a specific statute.Weidenbacher v. Duclos, 234 Conn. 61-67 (1995). Connecticut has not limited the class of persons who may advance such proof of paternity. Compare Connecticut General Statute § 46b-160 (mother); § 46b-172a
(father); § 46b-55 (b) (child) or § 46b-162 § 46b-168 a (a) IV-D (government agency).
DCF does have a general statutory mandate to resolve paternity issues in neglect/uncared for cases. The petition filed by DCF must contain "the name and residence of the parents". At the first plea hearing on the petition the court must advise the parent of the petition allegation, appoint an attorney for the parent and take steps to determine identity of the father of the child, including ordering genetic testing; if a person appears as father, the court must resolve the issue of paternity. C.G.S. CT Page 16485 § 46b-129 (a).
If a mother names several putative fathers who are included in the termination petition, or if the fathers were unknown, DCF would have an interest in resolving the paternity.
§ 45a-715 (b); Connecticut Practice Book § 34-1(c); In re BabyGirl B. 224 Conn. 296 (1992). The validity of any adoption would depend on proper parties in the juvenile proceedings.
This case does not involve an equitable status as father or fraud. Support is not an issue at this time. What is involved is the general rule that Jacqueline was born in wedlock, and is presumed to be the legitimate child of the mother and her husband. This presumption may be rebutted by clear, convincing and satisfactory evidence that the husband is not the child's natural father. Weidenbacher v. Duclos, supra, 68-77.
Issues of access of a putative father or gestation period were not presented at the hearing. The sole witness was urologist Dr. James F. Devanmey, a qualified medical expert, who had been consulted by the husband because he had not impregnated his wife during the marriage. A biopsy performed on March 31, 1997, revealed no maturation of sperm production at any time. The doctor reported that with reasonable medical certainty the sterile husband could not father a child. While cessation of drug use might produce a change, the husband denied any drug use since 1986. The doctor concluded that nothing could be done now to reverse the situation. It is extremely unlikely to impossible for a reversal of the medical condition. As the doctor phrased it, a miracle could change the husband's condition but not medicine. Dr. Devanmey suggested a genetic test to resolve any dispute. State's Exhibit 1.
The presumption is rebutted by testimony providing clear, convincing and satisfactory evidence that the husband is not the child's natural father.
 Ib. — Standing (Best Interest)
A mere assertion of no biological fatherhood thereby challenging the paternity of a child born in wedlock does not confer standing; DCF must offer more to engage judicial machinery to determine the biological father. The test is whether DCF has established that its interest and the best interests of the child outweigh those of this marital family unit. The child was removed by DCF six days after birth; she has not been returned. The contact has been by visitation. Under the circumstances, there is no present home environment or ongoing family unit. if the paternity is not resolved now, it may be raised to a devastating effect at CT Page 16486 some later point in the child's life. With the development of genetic engineering, the identity of Jacqueline's natural father may become medically vital. Assuming that the husband is not the father, DCF can make efforts to locate the natural father. The child has a right to know her natural father. Weidenbacher v. Duclos, supra, 74-77.
The court finds that the interests of DCF and the best interest of the child outweighs those of the martial family unit.
 II.
The court therefore finds standing by DCF to request a genetic test under § 46b-168.
If the genetic test disqualifies the husband as the parent, other roles may be available to him.
Accordingly, the court grants the motion for genetic testing.
Samuel S. Goldstein Judge Trial Referee