[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a post judgment motion for modification of custody of the minor child, Cassidy, now age 11 years. On November 3, 1993, the Court entered judgment awarding joint custody of their three minor children to the parents, physical custody to the mother, with liberal visitation to the father.
On or about January 23, 1997, the mother, by unsanctioned written agreement, gave physical custody of the two boys: John 16, and Andrew, now age 13, to the father. The major reason for this was her inability to handle them. The mother kept physical custody of Cassidy who is now 11 years of age. The mother, as a result of the informal agreement, had liberal rights of visitation as to the two boys in lieu of their physical custody. The father is seeking residential custody of Cassidy. He asserts that all three children should grow up together. He wants the mother to have liberal visitation with Cassidy. The father expresses serious concerns about the mother's home, believing it to be a poor environment for their daughter. The mother had a child, Brandon Hogestyn, now age 2, out of wedlock with Bart Hogestyn, who was married and is still married to the same woman and who lived next door to the Barrys during the time of the Barrys' marriage. Prior to the dissolution of their marriage, and since the dissolution, the mother has carried on an open and regular sexual relationship with Mr. Hogestyn with the full knowledge and acquiescence of Mr. Hogestyn's wife, Debra. Mr. Hogestyn goes to the mother's home in Newtown from his home in Oxford and stays overnight two or three days a week. She has an ongoing and active sexual relationship with Mr. Hogestyn that has continued since prior to the dissolution of her marriage.
Dr. J. Brien O'Callaghan, a licensed psychologist and a CT Page 12829 licensed marriage and family therapist, testified about his participation in the treatment of the parties and his attempts to counsel the parties relating to custody and visitation matters. The Court, after argument, precluded his testimony and ordered his entire testimony stricken, except the testimony that directly related to the treatment of the mother in that she was the only participant who consented to treatment. The Court has not considered his testimony except as it relates to his treatment of the mother. Dr. O'Callaghan testified that the mother's conduct is far from the accepted norm and that her behavior is immoral. He also testified that the mother has a great deal of love and cares very much for Cassidy. Basically, all the witnesses concede that, except for her conduct with Mr. Hogestyn, no fault is found with her parenting skills.
The mother acknowledges that she is existing in an immoral relationship but claims this immorality has no impact on Cassidy because Cassidy is "handling it." Cassidy is very aware of the illicit relationship and she considers it improper. The mother does not know what impact her behavior will have on Cassidy in the years to come. She consistently testified that she has made a choice with respect to her relationship with Mr. Hogestyn and fully understands the consequences of her actions. She clearly has no intention of giving up her relationship with Mr. Hogestyn, and the Court is of the opinion that if given a choice of giving up her relationship with Mr. Hogestyn or giving up custody, she would take the latter course. The mother testified that she is worried that her three children will be affected in the future by her conduct because they might be questioned about Brandon and who his parents are.
Mr. Barry appears to be an extremely hard working and rather intense individual who is completely devoted to his three children. Since the date of the dissolution, he has had at least three female relationships, all of whom liked the three children and this fondness was reciprocated. There is no valid evidence that he ever conducted himself with any sexual impropriety in the presence of any of his children. He is steadfast in his belief that his former wife's meretricious conduct is highly detrimental to their daughter, and that Cassidy should be removed from this bizarre environment. There was testimony that should be credited that because of his intense feelings, he has described his former wife's conduct in salacious and opprobrious terms, and he has made his strong feelings known to all of his children. The recriminations have probably had some affect on their two sons CT Page 12830 but Cassidy continues to support her mother and has urged her mother to marry Mr. Hogestyn. The mother's response to this is that Mr. Hogestyn is happily married and she does not want to break down the Hogestyn family's relationships.
Linda Piascik, a Family Relations Counselor, testified that she conducted a custody study. Part of her consideration was based on Dr. O'Callaghan's reports. The Court has examined the Family Relations Counselor's report, and has not considered any of Dr. O'Callaghan's history, findings, or recommendations in making its decision except as it relates to Mrs. Barry and Dr. O'Callaghan's treatment of her. She further testified that Cassidy's interaction and consideration of Mr. Hogestyn was minimal. This is contrary to the testimony of the mother who testified that Mr. Hogestyn was deeply committed to Cassidy and herself and that Cassidy also reciprocated. Mr. Hogestyn's interest appeared to be genuine. Ms. Piascik considers both parents to be caring and competent parents. Ms. Piascik testified that she interviewed Evangelyn Sandeen who counseled the mother and who recommends in Ms. Piascik's report that she supports Cassidy's continued residence with her mother. However, Ms. Sandeen has not seen Cassidy since 1994 and that was only on one occasion.
The father has the burden of proving that a change in custody would be in the best interest of Cassidy. Kearney v. State,174 Conn. 244 (1978); Ireland v. Ireland, 45 Conn. App. 423, cert. granted, in part, 243 Conn. 905 (1978). The Court finds that the birth of Brandon out of wedlock and the mother's persistence in maintaining a long term illicit relationship is a material change in circumstances that justifies modification of Cassidy's custody. Walshon v. Walshon, 42 Conn. App. 651 (1996). The Court finds that the plaintiff has sustained his burden of proof by a preponderance of the evidence. Mallory v. Mallory, 207 Conn. 48
(1988). The Court finds that a change of physical custody is required because the existing physical custody arrangement is not in Cassidy's best interest at the present time or in the near future. The mother is a fit person in most aspects of her relationship with Cassidy but has demonstrated such a lack of judgment and insight in her unbridled persistence in maintaining her long-standing affair with Mr. Hogestyn that Cassidy cannot help but doubt the validity of monogamous relationships that are the basis and foundation of our society. The mother concedes her conduct is immoral but she simply will not refrain from this highly inappropriate and offensive conduct. CT Page 12831
The father impresses the Court as a person who is very concerned about Cassidy's short-term and long-term welfare. He is young enough and intelligent enough to develop a more nurturing spirit in dealing with Cassidy and he can and should be assisted by counseling. Counseling should also include anger management. He is committed to bringing up their three children in a healthy environment free of promiscuity.
The Court orders that the parties continue to have joint custody of Cassidy, but that the original judgment be modified. Physical custody of Cassidy is awarded to the plaintiff father. The terms of visitation for the defendant mother will be decided by the Court if the parties are unable to agree upon same. Any order of visitation and any agreement shall preclude any overnight visits by Mr. Hogestyn during the period of the three children's visitation.
The actual transfer of physical custody is stayed until school transfers, etc., can be effectuated with as little interference as possible in the day-to-day activities of Cassidy. The stay is for this purpose only.
Owens, J.